IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 3, 2009

## STATE OF TENNESSEE v. TRAVIS KNOTTS

**Direct Appeal from the Circuit Court for Madison County**
No. 08-235     Donald H. Allen, Judge

No. W2008-01948-CCA-R3-CD  - Filed April 24, 2009

The defendant, Travis Knotts, pled guilty to theft of property over $10,000, a Class C felony, and was sentenced to six years on probation.  On appeal, he argues that the trial court erred in denying his request for judicial diversion.  After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Gregory D. Gookin, Assistant Public Defender, for the appellant, Travis Knotts.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The factual basis for the defendant's guilty plea was as follows:

[B]etween July and December of 2007, [the defendant] along with the codefendant, Mr. McKinney, did knowingly obtain or exercise control over property being electronics and miscellaneous merchandise over the value of $10,000 without the effective consent of the owner being Wal-Mart with the intent to deprive the owner of the property.  The total amount of merchandise was $26,412.56.

What was occurring . . . was that [the defendant] along with Mr. McKinney were working in the receiving department at Wal-Mart and they were taking items that were coming in on the tractor trailer trucks into Wal-Mart. It was items such as IPOD's, MP3 players, memory cards, Play Station games, DVD's, digital cameras and those type things and this was recorded on video and they would conceal it in their clothes and then leave the store with them in their clothes. They were confronted about this and [the defendant] did admit that he did this and that he took these items over this period of time and that he would sell the things that he would receive. He named some names including Mr. McKinney, the codefendant in this matter, as also being involved. Mr. McKinney was also caught on video tape doing this. Mr. McKinney also has admitted to doing this. This occurred during about this six month time period for various electronic items they were taking in in the receiving department against Wal-Mart's will and permission. . . .

. . . .

. . . [T]hey would destroy the boxes, put them in the shredder or what have you, the boxes that they came in, and put the items in his clothes and I believe [the defendant] said he watched the DVD's and threw them away and I believe he had sold a lot of the other electronic items. He admits to about 70 IPOD's, 65 MP3 players, 100 DVD's, five or six Play Station games and a couple of memory cards and a digital camera. Clearly there was a lot more merchandise that was taken. Between the two of them it totaled about $26,000.

The trial court accepted the defendant's guilty plea and set a hearing to determine whether to grant judicial diversion. At the diversion hearing, the twenty-year-old defendant testified that he was married and said that he and his wife had lived with his mother-in-law for approximately three years. The defendant was currently working at Pizza Hut and presented a letter from his manager that listed when he started working, how many hours he worked per week, and his pay rate. The defendant stated that he had previously worked in the receiving department at Wal-Mart until he was arrested on December 26, 2007. The defendant said that he admitted his wrongdoing when confronted by store management with evidence of his thefts and had also admitted his participation to the judge at his guilty plea hearing. The defendant stated that he sold the majority of the stolen items and used the proceeds to pay bills, "buy different stuff for the house," and travel to Memphis to see his infant son who was in the hospital but eventually passed away.

The defendant testified that he quit school after the ninth grade but said he was willing to get his GED if required by the court. The defendant denied the use of any drugs. He said he was willing to get a second job in order to pay restitution to Wal-Mart. The defendant had been released on his own recognizance and had been reporting to a community corrections officer for two months without any problems. He expressed a desire to obtain his GED and a degree in computer technology in the future.

Weston Watkins, the defendant's community corrections case officer, testified that the defendant reported twice a week and had not missed any of his appointments. The defendant was drug-tested regularly and had never tested positive. Watkins said the defendant kept him informed of his work schedule and whereabouts.

After a recess to allow the court to review the exhibits, the court presented its findings. The court found that the defendant's lack of a criminal record reflected favorably on his amenability to correction and weighed in favor of diversion. The court determined that the circumstances of the offense weighed against diversion because the thefts occurred many times over a six-month period, involved a large amount of merchandise, and involved a violation of his employer's trust. The court stated that it was concerned about the defendant's social history because he had been fired from jobs, dropped out of school in the ninth grade, and had previously made no efforts to complete high school or obtain his GED. The court noted that the defendant reported no mental or physical disabilities, no drug or alcohol use, and had passed random drug tests, which the court weighed in the defendant's favor.

As to deterrence, the court said it "is not willing to send a message to employees that you can go out and steal over $10,000 worth of property and get placed on diversion, especially when you committed thefts on numerous occasions." The court observed that the defendant had six months in which he could have admitted the thefts to his employer, but the defendant "never once felt any remorse as best I can tell." The court considered the defendant's statement in which he said that after he had been working at Wal-Mart for two months, he and his codefendant "started taking items off of the trucks and taking them out of the store and s[elling] the stuff that I stole." The court noted that the defendant had to know people in the community who were willing to buy stolen merchandise, and the court weighed against diversion that the defendant "stole so he could get money."

The court questioned the defendant's sincerity when he said he used the money for cigarettes and gas and "most of it was going to see [his] son who was in the hospital in Memphis." The court noted that even with high gas prices, it did not think the defendant spent "twenty something thousand dollars on gas going back and forth to Memphis." The court believed that much of the money was used for things other than gas and cigarettes and, because it found that the defendant was not "very truthful and honest about what he used the money for," weighed the factor against diversion. The court concluded that diversion would not serve the ends of justice because it would send the wrong message. Accordingly, the trial court denied the defendant's request for diversion but found that he was a good candidate for probation.

## ANALYSIS

The defendant argues that the trial court erred in denying his request for judicial diversion. Tennessee Code Annotated section 40-35-313 provides that, following a determination of guilt by plea or by trial, a trial court may, in its discretion, defer further proceedings and place a qualified defendant on probation without entering a judgment of guilt. Tenn. Code Ann. § 40-35-313(a)(1)(A) (2006). A qualified defendant is one who is found guilty or pleads guilty or nolo contendere to a

misdemeanor or Class C, D, or E felony; has not been previously convicted of a felony or a Class A misdemeanor; and who is not seeking deferral for a sexual offense, a violation of Tennessee Code Annotated sections 71-6-117 or 71-6-119, or a Class A or B felony. Id. § 40-35-313(a)(1)(B)(i). If the defendant successfully completes the period of probation, the trial court is required to dismiss the proceedings against him, and the defendant may have the records of the proceedings expunged. Id. § 40-35-313(a)(2), (b).

The decision to grant or deny a qualified defendant judicial diversion lies within the sound discretion of the trial court. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). As such, it will not be disturbed on appeal absent an abuse of discretion. Electroplating, 990 S.W.2d at 229; Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168. To constitute an abuse of discretion, the record must be devoid of any substantial evidence in support of the trial court's decision. Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168; State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

In determining whether to grant diversion, the trial court considers (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether judicial diversion will serve the interests of the public as well as the accused. Electroplating, 990 S.W.2d at 229; Bonestel, 871 S.W.2d at 168. A trial court should not deny judicial diversion without explaining the factors in support of its denial and how those factors outweigh other factors in favor of diversion. Electroplating, 990 S.W.2d at 229.

In denying diversion, the court weighed in the defendant's favor that he had no criminal history and its reflection on his amenability to correction. The court also weighed his physical and mental health, and lack of drug or alcohol use favorably to the defendant. However, the court determined that the circumstances of the offense weighed against diversion because the thefts amounted to "a large, very serious amount," involved stealing from his employer, and were "many, many times" more than a one-time isolated theft. The court also determined that the defendant's poor educational background and work history of getting fired from jobs weighed against diversion. The court did not find the defendant "very truthful and honest about what he used the money for," thus weighing against diversion. The court found that deterrence was a major factor against diversion because it was "not willing to send a message to employees that you can go out and steal over $10,000 worth of property and get placed on diversion, especially when you committed thefts on numerous occasions." The court noted that it would have weighed it favorably for diversion if the defendant had "stole[n] once or twice and realized what he was doing was wrong and went to his employers [to] . . . tell [them] what [was] going on in the shipping and receiving department." The court observed that the defendant, instead, continued to steal over a period of six months with "[p]erhaps as many as 15 other people according to the codefendant's statement." The record shows that the defendant did not admit his wrongdoing until confronted by store management with

-4-

videotaped evidence of such. The court ultimately concluded that diversion would not serve the ends of justice. In sum, we note that the defendant presents some factors favorable to diversion; however, the record shows that the trial court considered and weighed the relevant factors in reaching its decision and substantial evidence in the record supports the court's conclusion.

## **<u>CONCLUSION</u>**

Based on the aforementioned authorities and reasoning, we affirm the trial court's denial of judicial diversion.

_____
ALAN E. GLENN, JUDGE